In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00055-CR


______________________________




MAURICE MITCHELL, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 98-F-331-202




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Maurice Mitchell was convicted by a jury for possession of a deadly weapon in a
penal institution. See Tex. Pen. Code Ann. § 46.10(a)(2) (Vernon 1994). At the
punishment phase, the jury found the allegations of the enhancement paragraphs true and
assessed Mitchell's punishment at imprisonment for seventy years. The trial court
sentenced Mitchell in accordance with the jury verdict, and as required by Tex. Code Crim.
Proc. Ann. art. 42.08(b) (Vernon Supp. 2001), ordered the sentence to run consecutively
to the sentence Mitchell was already serving. Mitchell appeals pro se.

Background Facts



 Jaymi Johnson is an employee of the Texas Department of Criminal Justice-Institutional Division (TDCJ-ID), Telford Unit, a prison facility in New Boston, Texas. He
is a sergeant of correctional officers. On October 24, 1996, he was on duty at the
sergeant's desk in Seven Building when he observed Mitchell, an inmate, running down the
hallway approaching his desk, chasing another inmate, Terence Bell. Mitchell held in his
hand what is commonly known as a "shank," a homemade sharp instrument, and was
threatening Bell. Johnson identified State's Exhibit 2 as the object with which Mitchell
threatened Bell. As the two came down the hallway toward Johnson, Bell ran behind
Johnson with Mitchell in pursuit, swinging at Bell and yelling for Johnson to get out of the
way. Johnson did not observe Bell in possession of any type of weapon. Mitchell was
chasing Bell around the desk when Bell finally picked up a chair and struck Mitchell,
knocking him to the floor. When Mitchell fell, Bell and Johnson secured Mitchell's left arm
and another officer, Cornelius McBee, took the homemade weapon from Mitchell. Officer
Brandon Brown also came to Johnson's assistance. Johnson did not know what
precipitated the dispute between Bell and Mitchell. 

 Johnson testified that the prisoners greatly outnumber the guards in the Telford Unit
and that the guards carry no weapons. All inmates are informed of the rules and
regulations of the prison, which prohibit the possession of weapons by inmates. Johnson
testified that the prison has a procedure that allows inmates who feel they are in fear of
their lives to be moved from a particular building or area to another. He testified that he
has the authority to immediately move an inmate from a building if there is an immediate
danger. 

 Brown testified that he was sitting at his desk when he saw Mitchell and Bell running
through a hallway door. He identified State's Exhibit 2 as resembling the weapon he saw
in Mitchell's hand. Brown testified that Mitchell was attempting to stab Bell with the
weapon. Brown further testified that Bell had no weapon and that he did not observe Bell
raise his fist against Mitchell. Rather, according to Brown, Bell was trying to get away from
Mitchell. Brown observed Mitchell chase Bell around Johnson's desk and heard Johnson
tell Mitchell numerous times to put down the weapon. Brown left the immediate area briefly
to go for additional help, and when he returned, he saw Bell strike Mitchell with a chair,
knocking him down. Brown testified that when Mitchell was knocked down, he and
Johnson held Mitchell's arm, while McBee took the weapon from him. Brown did not see
what happened immediately before the incident. Brown also testified that when an
inmate's life is in danger and that inmate informs a guard, the guard is authorized to
remove the inmate and provide for his safety.

 McBee also identified Mitchell as the inmate he observed chasing Bell with a shank. 
He identified State's Exhibit 2 as the object he saw in Mitchell's possession. He saw Bell
knock Mitchell to the floor with a chair, at which time he took the shank from Mitchell. 
McBee testified he had no knowledge of any previous difficulties between Bell and Mitchell. 

 Joe Skipper is an investigator for TDCJ-ID. He took possession of the shank taken
from Mitchell by McBee and maintained possession until trial.

 Inmate Willie Anderson Green testified for the defense. He described previous
incidents between Mitchell and Bell and Bell's friends. This included an incident in which
one of Bell's friends struck Mitchell while Bell distracted him, causing Mitchell to lose
consciousness. Green also testified that a group of Bell's friends destroyed Mitchell's word
processor and other property in Mitchell's cell.

 Mitchell testified on his own behalf. He stated Bell was part of a group of inmates
who had been threatening him. He testified that during one confrontation with Bell and his
group, inmate McNulty "sucker punched" him, knocking him unconscious. Mitchell testified
the dispute concerned removal from that group's area of a homosexual inmate, referred
to as their "punk." The group blamed Mitchell for his removal and claimed that their
property loss, i.e., the value placed on their punk, was $60.00. On the date of the incident
involved in this case, Mitchell said Bell confronted him in the "chow line," and in order to
protect himself, he chased Bell with his "protection," i.e., the shank, which he admitted he
had in his possession. Mitchell further admitted Bell had no weapon at that time.

 On rebuttal, Bell testified Mitchell's dispute with him concerned Mitchell's failure to
provide him with sufficient merchandise in a marihuana deal, as a result of which Mitchell
owed him $60.00. Bell admitted the previous incident involving the "sucker punch," which
resulted in Mitchell being knocked unconscious. Bell further testified he had no weapon
in his possession on the date of the incident in question. 

Recusal or Disqualification of Trial Judge

 In his first issue, Mitchell contends the trial court erred in overruling his motion to
recuse Judge Bill Peek. Mitchell's pro se motion was filed pursuant to Tex. R. Civ. P. 18a. 
As grounds for disqualification, Mitchell alleged that Judge Peek was biased against
African-Americans and inmates, that Judge Peek ordered him shackled during all court
appearances, that Judge Peek failed to provide him with a private place where he could
consult with his attorney before appearing in court, that he was told by his court-appointed
counsel, Connie Mitchell, that Judge Peek "does not give a damn" about inmates, that
Judge Peek failed to rule on certain unspecified motions, that a disproportionate number
of African-Americans are tried and convicted before Judge Peek, and that Judge Peek and
Assistant District Attorney James Elliott are related.

 Article V, § 11 of the Texas Constitution provides that a judge is disqualified if the
judge has an interest in the case, is related to a party within the prohibited degree, or
where the judge was counsel in the case. Tex. Const. art. V, § 11; Stafford v. State, 948
S.W.2d 921, 924 (Tex. App.-Texarkana 1997, pet. ref'd); see also Tex. Code Crim. Proc.
Ann. art. 30.01 (Vernon Supp. 2001). Caselaw has established an additional basis for
disqualifying a judge where that judge's bias is of such nature and to such extent as to
deny a defendant due process of law. McClenan v. State, 661 S.W.2d 108, 109 (Tex.
Crim. App. 1983); Stafford, 948 S.W.2d at 924.

 A motion for disqualification on the ground of bias should be heard by another judge
in the same manner, and subject to the same procedural requirements, as a motion to
recuse. Tex. R. Civ. P. 18a; Stafford, 948 S.W.2d at 924-25. Rule 18a is applicable in both
criminal and civil cases. Arnold v. State, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993). 

 Before bias becomes sufficient to justify the disqualification of a judge, the bias must
stem from an extrajudicial source and result in an opinion on the merits on some basis
other than what the judge learned from his participation in the case. Kemp v. State, 846
S.W.2d 289, 306 (Tex. Crim. App. 1992); see also Quinn v. State, 958 S.W.2d 395, 402-03
(Tex. Crim. App. 1997); Chandler v. Chandler, 991 S.W.2d 367, 385-86 (Tex.
App.-El Paso 1999, pet. denied), cert. denied, 529 U.S. 1054, 120 S.Ct. 1557, 146 L.Ed.2d
462 (2000); Stafford, 948 S.W.2d at 924.

 The standard of review for the denial by the trial court of a motion to recuse is
whether the trial court abused its discretion, i.e., whether the trial court acted without
reference to any guiding rules or principles. Chandler, 991 S.W.2d at 385.

 The hearing on Mitchell's motion was before Judge Leon Pesek, appointed by the
presiding judge of the First Administrative Judicial District. See Tex. R. App. P. 18a(c). 
Mitchell appeared at the hearing pro se. Two of his court-appointed attorneys, Connie
Mitchell and Rudolph Brothers, were in attendance, but after being warned of potential
difficulties in proceeding without counsel, Mitchell elected to continue without
representation.

 Connie Mitchell testified at the hearing and denied that Judge Peek said he did not
"give a damn" about inmates, because he is a strictly religious person and would not use
such language. Connie Mitchell further testified that her perception of both Judge Peek
and prosecutor Elliott was that they were not favorably disposed toward inmates. She also
testified, however, that she was unaware of any specific bias directed toward Mitchell
personally and that she never perceived the judge's personal feelings about "a group of
people" interfered with his professional responsibilities. 

 Judge Peek testified at the hearing. He stated that he tries to fulfill his responsibility
of being fair to all parties in his court and stated to Mitchell: "I would try to be just as fair
with you as I would with my own mother, seriously." The judge further testified there were
African-American persons on the grand jury that indicted Mitchell, and he denied using
language like "give a damn." 

 Both Elliott and Judge Peek denied being related to each other by blood or
marriage. 

 Mitchell produced no compelling evidence that Judge Peek should have been
disqualified pursuant to state constitutional grounds or due to bias resulting in denial of due
process. The record demonstrates no abuse of discretion by Judge Pesek in denying the
motion to recuse or disqualify. This issue is overruled.

Lack of Representation of African-Americans

on the Indicting Grand Jury/

Motion to Testify Before the Grand Jury


 In his second issue, Mitchell contends the trial court abused its discretion by denying
his motion to quash the indictment, thereby denying his constitutional rights under the Sixth
and Fourteenth Amendments to the United States Constitution. The motion alleges that
African-Americans were underrepresented on the Bowie County grand jury that indicted
Mitchell. Mitchell also contends the trial court erred in not permitting him to testify before
the grand jury.

 Discrimination on the basis of race in the selection of the grand jury strikes at the
fundamental values of our judicial system and our society as a whole, and an accused
individual's right to equal protection of laws is denied when that person is indicted by a
grand jury from which members of a racial group have been purposefully excluded. 
Vasquez v. Hillery, 474 U.S. 254, 262, 106 S.Ct. 617, 88 L.Ed.2d 598, 608 (1986); Rose
v. Mitchell, 443 U.S. 545, 556, 99 S.Ct. 2993, 61 L.Ed.2d 739, 749-50 (1979).

 An accused individual is entitled to a jury drawn from a fair cross-section of the
community. In order to establish a prima facie violation of this requirement, a defendant
must show: 1) that the group alleged to have been excluded is a "distinctive group" in the
community; 2) that the representation of this group in venires from which jurors are
selected is not fair and reasonable in relation to the number of such persons in the
community; and 3) that this underrepresentation is due to systematic exclusion of the group
in the jury selection process. Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 58
L.Ed.2d 579, 586-87 (1979); Aldrich v. State, 928 S.W.2d 558, 560 (Tex. Crim. App. 1996). 

 While African-Americans are recognized as a distinctive group in the community,
Mitchell failed to establish by any type of numerical or statistical evidence the
underrepresentation of African-Americans on grand juries in Bowie County, or any
systematic exclusion of this group in selection of grand jury members. Having failed such
required proof, we overrule this issue. 

 As to Mitchell's contention that he was entitled to appear and testify personally
before the grand jury deliberating his case, the law is well established that the subject of
an investigation does not have the right to appear in person or by counsel before the grand
jury. Rogers v. State, 774 S.W.2d 247, 262 (Tex. Crim. App. 1989); Moczygemba v. State,
532 S.W.2d 636, 638 (Tex. Crim. App. 1976). An accused does not have the right to be
confronted with and to cross-examine witnesses who appear before the grand jury
investigating and considering matters in which the accused is a prospective defendant. 
Moczygemba, 532 S.W.2d at 638; Lopez v. State, 158 Tex. Crim. 16, 252 S.W.2d 701, 704
(1952). We also overrule this issue.

Speedy Trial

 Mitchell also alleges that his speedy trial rights were violated and that the trial court
erred in refusing to dismiss his prosecution for such violation. 

 The constitutional right to a speedy trial is found in the Sixth Amendment to the
United States Constitution. Because the lack of a speedy trial may, depending on the
circumstances, work to the advantage or disadvantage of either the prosecution or the
defense, in order to determine whether a defendant's constitutional right has been violated,
the United States Supreme Court has adopted a balancing test, in which the conduct of
both the prosecution and the defense is weighed. In determining whether the constitutional
right to a speedy trial has been violated, four factors are considered: 1) the length of the
delay; 2) the reason(s) for the delay; 3) the defendant's assertion of his right; and 4)
prejudice to the accused. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d
101, 116-17 (1972); State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); Meyer
v. State, 27 S.W.3d 644, 648 (Tex. App.-Waco 2000, pet. ref'd). The balancing test
requires weighing case by case the conduct of both the prosecution and the defense. No
single factor as outlined in Barker is a necessary or sufficient condition to the finding of a
speedy trial violation. The related factors must be considered together with such other
circumstances as may be relevant. Munoz, 991 S.W.2d at 821. The appropriate standard
of appellate review is a bifurcated one, i.e., an "abuse of discretion" standard for the factual
determinations of the trial court, and a "de novo" standard for the legal components of the
trial court's determination. Id.; see also Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997); Johnson v. State, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). 

 Length of Delay. The length of the delay is considered a "triggering" mechanism for
the analysis of the other Barker factors. Munoz, 991 S.W.2d at 821-22. The delay is
measured from the time the defendant is formally accused or arrested. United States v.
Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468, 479 (1971); Hull v. State, 699
S.W.2d 220, 221 (Tex. Crim. App. 1985); Jones v. State, 944 S.W.2d 50, 53 (Tex.
App.-Texarkana 1997, pet. ref'd). Delays of two years and three months (Hull, 699 S.W.2d
at 221), seventeen months (Munoz, 991 S.W.2d at 822), and twenty-three months (Meyer,
27 S.W.3d at 648-49), have been held sufficient to trigger the analysis of other Barker
factors. This Court has determined that any delay over eight months is presumptively
unreasonable, i.e., triggers consideration of other factors. Jones, 944 S.W.2d at 53.

 Mitchell was indicted for the offense of possession of a deadly weapon in a penal
institution on July 23, 1998. (1) Jury selection for Mitchell's trial began on Tuesday,
December 28, 1999, and the presentation of evidence started on December 29, 1999. 
This is sufficient delay to warrant a consideration of other Barker factors.

 Reason(s) for the Delay. Barker discusses three categories of delay and their effect
on the court's determination: 1) deliberate attempts by the prosecution to delay the trial
in order to hamper the defense are weighed heavily against the prosecution; 2) more
neutral reasons, such as negligence by the state, or overcrowded dockets, are weighed
less heavily against the prosecution, but are still considered because the ultimate
responsibility for these circumstances lies with the state and not the defendant; and 3) valid
reasons for delay, such as a missing witness. Barker, 407 U.S. at 530-31; see Guajardo
v. State, 999 S.W.2d 566 (Tex. App.-Houston [14th Dist.] 1999, pet. ref'd). Of course,
delay caused by actions of the defendant is not counted against the prosecution. 
Steinmetz v. State, 968 S.W.2d 427, 434 (Tex. App.-Texarkana 1998, no pet.). An
accused may lose his or her entitlement to the speedy trial safeguard when he or she
shares responsibility for the delay. Love v. State, 909 S.W.2d 930, 947 (Tex.
App.-El Paso 1995, pet. ref'd).

 The record does not show any requested continuances or other delays caused by
the State. Mitchell has failed to demonstrate that any time elapsing between the indictment
and the trial was due to any act or omission by the State. On the other hand, at a pretrial
hearing held the day before trial, Mitchell stated on the record that he had filed forty-two
pleadings in this case. While we cannot fault an accused individual for filing meritorious
pretrial motions, we question the necessity for this large number of motions in this kind of
case, where the facts are straightforward and the issues clear. The trial court's dealing
with this many pretrial motions undoubtedly contributed to the delay in this case to some
extent. A sampling of these motions includes: a motion for self-representation; a motion
to recuse the trial judge; a challenge to the composition of the grand jury; request for
appointment of a psychologist; three motions in limine; and three motions to quash the
indictment.

 Again, we do not question the legitimacy of these motions, but merely point out that
each required a formal hearing by the trial court which necessarily contributed to part of the
delay, and it would be unfair to credit any such delay to the State. Finally, the defense was
granted one continuance which resulted in a delay of two weeks. This continuance should
not be counted against the State for speedy trial purposes. 

 Defendant's Assertion of His Right to a Speedy Trial. Mitchell filed a "Motion for
Fast & Speedy Trial" pro se on January 27, 1999. Again, on September 24, 1999, he filed
a motion to dismiss for violation of "Fast and Speedy Trial Act" pro se. Mitchell clearly
asserted his right to a speedy trial.

 Prejudice to the Accused. In his motion for a speedy trial, Mitchell claimed prejudice
from the delay due to witnesses who could no longer be located or whose memory would
be impaired due to the lapse of time and that certain tangible evidence favorable to him
would be lost or destroyed. However, there is nothing in the record to substantiate these
claims, and Mitchell fails to explain in his brief how these matters caused him prejudice. 
He fails to point to any specific witness he claims suffered memory loss due to any delay,
nor does he name-at the pretrial hearing, at trial, or in his brief-any witness he wanted to
call but was unable to because of the delay. He also failed, at both the pretrial hearing and
at trial, to point to any other evidence that would have been helpful to him that he was
unable to produce at trial because of the delay. Even assuming an unreasonable delay,
Mitchell has failed to establish any resulting prejudice to his case.

 The trial court did not abuse its discretion in overruling his motion. This issue is
overruled.

Ineffective Assistance of Counsel

 In Mitchell's fourth issue, he complains, generally, about ineffective assistance of
counsel. As a part of this same issue, he also complains that he was denied his right to
self-representation and complains of this Court's requirement that he confine his brief to
no more than fifty pages. We will address the self-representation and briefing page limit
complaints first, then respond to Mitchell's claim of ineffective assistance of counsel. 

 Self-representation. Mitchell contends his right to self-representation was violated
because he was forced to accept representation by counsel. The Sixth and Fourteenth
Amendments to the United States Constitution guarantee that a person brought to trial in
any state or federal court may dispense with counsel and make his or her own defense. 
Moore v. State, 999 S.W.2d 385, 396 (Tex. Crim. App. 1999), cert. denied, 530 U.S. 1216,
120 S.Ct. 2220, 147 L.Ed.2d 252 (2000). As stated in the leading case of Faretta v.
California:

 Personal liberties are not rooted in the law of averages. The right to defend
is personal. The defendant, and not his lawyer or the State, will bear the
personal consequences of a conviction. It is the defendant, therefore, who
must be free personally to decide whether in his particular case counsel is
to his advantage. 

 

422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562, 581 (1975). However, the right to
represent oneself will not attach until it is clearly and unequivocally asserted. Funderburg
v. State, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986); Cain v. State, 976 S.W.2d 228, 235
(Tex. App.-San Antonio 1998, no pet.). The question of self-representation was
addressed in a pretrial hearing held the day before trial. There, the trial court warned
Mitchell that he would be very unwise not to accept counsel to advise him about the
admissibility of evidence and to preserve any trial court error for appeal. After being
warned, Mitchell unequivocally stated to the trial court that he would accept counsel. This
contention is overruled.

 Length of Brief. Mitchell complains this Court required his brief to be no more than
fifty pages in length. This requirement was made pursuant to Tex. R. App. P. 38.4, which
specifically limits appellants' briefs to "no longer than 50 pages." While we may, on proper
motion under the rule, allow longer briefs, Mitchell did not file such a motion. A party
proceeding pro se must comply with all applicable procedural rules. Weaver v. E-Z Mart
Stores, Inc., 942 S.W.2d 167, 169 (Tex. App.-Texarkana 1997, no writ).

 Ineffective Assistance of Counsel. When confronted by a claim of ineffective
assistance, the two-pronged analysis of Strickland (2) is utilized to determine whether the
accused did not receive constitutionally effective assistance of counsel. Under the first
prong of the Strickland test, an appellant must show that counsel's performance was
deficient, i.e., show that counsel made errors so serious that counsel was not functioning
as the counsel guaranteed by the Sixth Amendment. To be successful in such a claim, an
appellant must show that counsel's representation fell below an objective standard of
reasonableness. Under the second prong, an appellant must show that the deficient
performance jeopardized his defense. The appropriate standard for judging prejudice
requires an appellant to show there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different. A
reasonable probability is a probability sufficient to undermine confidence in the outcome. 
In order to prevail, an appellant must prove both prongs by a preponderance of the
evidence. The review of defense counsel's representation at trial is highly deferential. The
appellate court engages in a strong presumption that counsel's actions fell within the wide
range of reasonably professional assistance. The appellant has the burden of overcoming
the presumption that under the circumstances the challenged action might be considered
sound trial strategy. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000); see Smith
v. State, 40 S.W.3d 147 (Tex. App.-Texarkana 2001, no pet.).

 On this direct appeal, Mitchell challenges numerous actions and inactions of trial
counsel as demonstrating ineffective assistance. Specifically, Mitchell points to counsel's
failure to: 1) file a motion to dismiss on speedy trial grounds; 2) obey a letter sent by
Mitchell; 3) examine the prosecutor's file; 4) call an expert witness; 5) admit into evidence
certain defense exhibits; and 6) obtain hearings on certain pretrial motions, including a
motion to quash the indictment, a motion for an examining trial, and a motion for a hearing
on the defense of entrapment. None of Mitchell's contentions is supported by the record. 
Where a record is not developed regarding the reasoning behind criticized actions or
inactions of counsel, an appellant fails to overcome the strong presumption that counsel's
actions were proper. Lagaite v. State, 995 S.W.2d 860, 864 (Tex. App.-Houston [1st Dist.]
1999, pet. ref'd); see also Thompson v. State, 9 S.W.3d 808, 813 n.5 (Tex. Crim. App.
1999). 

 In addition, we have reviewed the record of the pretrial hearing, and that record
shows most, if not all, of the pretrial motions, including those filed by Mitchell's counsel as
well as those filed by Mitchell pro se, were discussed and ruled on at this hearing. 
Significantly, Mitchell has not informed this Court of any particular motion not raised by
counsel or how he was prejudiced by any such omission. No prejudice has been shown. 
The second prong of Strickland has also not been satisfied. 

 Other ineffective assistance claims by Mitchell directly implicate the trial strategy of
defense counsel. Included here are Mitchell's contentions that: 1) counsel undermined
Mitchell's defense by making certain "concessions" with the prosecutor; 2) counsel failed
to object to the State's introduction of extraneous offenses in the form of disciplinary
reports; and 3) counsel erred in calling Willie Green, an inmate, as a witness. However,
as noted earlier, there is nothing in the record to reflect counsel's trial strategy in making
his or her decisions on these matters. When the record is silent as to counsel's reasons
for his or her actions or inactions, and plausible explanations exist, the appellate court
should presume that trial counsel made all significant decisions in the exercise of
professional judgment. Valdes-Fuerte v. State, 892 S.W.2d 103, 112 (Tex.
App.-San Antonio 1994, no pet.). 

 Concerning Mitchell's claim of ineffective assistance by his own counsel's inquiry
into his prior disciplinary violations, we note that when the accused in a criminal case
voluntarily testifies before a jury, he is subject to the same rules governing cross-examination as any other witness. This is to say that he may be impeached, contradicted,
discredited, and attacked in the same manner as any other witness. Bryan v. State, 837
S.W.2d 637, 643 (Tex. Crim. App. 1992). However, Tex. R. Evid. 608(b) states that
specific instances of a witness' conduct, for the purpose of supporting or attacking the
witness' credibility, may not be inquired into on cross-examination of the witness or proved
by extrinsic evidence, except conviction of a crime as provided in Tex. R. Evid. 609. This
prohibition would preclude an inquiry in this case into Mitchell's prior prison disciplinary
record. In United States v. Tomaiolo, 249 F.2d 683 (2d Cir. 1957), the federal court of
appeals held that, notwithstanding the defendant taking the stand in his own behalf, it was
error for the judge to permit him to be cross-examined by the prosecutor concerning his
breaches of prison discipline during his nine years of incarceration:

 Nor did the defendant by testifying put his general character in issue. By
taking the stand the defendant elected to be treated as any other witness,
viz. he laid his credibility open to attack. Although a prosecutor may bring in
evidence as to the truth and veracity of a defendant upon cross-examination,
he is not at liberty to attack his general character. The general character of
a defendant is put in issue only when he calls witnesses to testify to his
reputation in general. The testimony of the defendant about his parole, and
the circumstances thereof, did not "open the door" for the prosecutor's
questions. . . .

 

 For the same reasons, questions regarding offenses against prison discipline
during the defendant's nine year incarceration from 1941 to 1950, for which
there had obviously been no separate conviction, and which were not
felonies or crimes involving moral turpitude, should not have been permitted.

 

249 F.2d at 689-90 (citations omitted); see also United States v. Cathey, 591 F.2d 268,
274 n.12 (5th Cir. 1979), which, citing Tomaiolo, held that "convictions" for violating military
discipline were not admissible to cross-examine a defendant testifying on his own behalf. 

 In its brief, the State argues that such evidence was admissible under Tex. Code
Crim. Proc. Ann. art. 37.07 (Vernon 1981 & Supp. 2001). However, by its own terms,
Article 37.07 applies only to the punishment phase of trial. Here, evidence of Mitchell's
disciplinary violations was introduced at the guilt/innocence phase of trial. Mitchell's
counsel specifically asked Mitchell about his prior disciplinary violations in prison. No
objections were made when the prosecutor then cross-examined Mitchell concerning the
details of those violations. When a defendant takes the stand and brings out certain
evidence on direct examination, he opens the door to the prosecutor's use of such
evidence and waives any objection to its admissibility. See Gaffney v. State, 940 S.W.2d
682, 687 (Tex. App.-Texarkana 1996, pet. ref'd) (op. on reh'g). 

 We must therefore determine whether counsel's opening the door to questions
about Mitchell's disciplinary record was deficient, and if so, whether such deficiency
prejudiced his defense. Since there was no hearing on any motion for new trial, we have
no record in this direct appeal as to defense counsel's thought process in opening the door
to this evidence. (3) 

 After the door was opened, the State then introduced many of the details concerning 
the disciplinary accusations that were brought against Mitchell. (4) On appellate review, we
presume that counsel's decisions are supported by trial strategy, unless they could not be
attributable to any plausible trial plan. Jackson v. State, 877 S.W.2d 768, 772 (Tex. Crim.
App. 1994); Poole v. State, 974 S.W.2d 892, 902 (Tex. App.-Austin 1998, pet. ref'd). In this
instance, however, we can perceive no plausible trial strategy for opening the door to this
kind of inflammatory evidence at the guilt/innocence phase of trial. We find counsel's
performance deficient. Compare Atkins v. Attorney General of Alabama, 932 F.2d 1430,
1431-33 (11th Cir. 1991), where it was held to be ineffective assistance of counsel to allow
without objection admission of fingerprint cards which contained a list of prior arrests, with
People v. Johnson, 579 N.E.2d 1291, 1293 (Ill. App. Ct. 1991), holding that failure to object
on hearsay grounds to admission of state's testimony regarding prison log constituted
ineffective assistance of counsel in prosecution for unlawful possession of a weapon in a
penal institution. However, our analysis does not end here. 

 Under the second prong of the Strickland test, if the evidence of guilt is
overwhelming, then there is no reasonable probability that the result of the defendant's trial
would have been different. Davis v. State, 830 S.W.2d 762, 766 (Tex. App.-Houston
[1st Dist.] 1992, pet. ref'd). In the present case, the charge was possession of a weapon
in a penal institution. All witnesses testified that Mitchell possessed a shank and that he
was an inmate confined in a penal institution. Mitchell admitted possessing the weapon,
chasing Bell while armed with the weapon, and that Bell did not possess a weapon. In light
of this overwhelming evidence of guilt, we cannot find that Mitchell was prejudiced by
counsel's ineffectiveness in opening the door to the introduction of Mitchell's disciplinary
record. See Johnson, 579 N.E.2d at 1293. 

 We find that Mitchell was not denied his right to self-representation, that he was
properly confined to fifty pages in his brief to this Court, and that he was not denied his
constitutional right to the effective assistance of counsel. This issue is overruled.

The Motion for New Trial

 In his fifth issue, Mitchell contends the trial court abused its discretion and hence
erred in ruling on a motion for new trial filed by his court-appointed counsel instead of a
motion for new trial that Mitchell filed pro se. He contends that as of the end of trial he
"terminated" his lawyer, and that on the same day his former lawyer filed a motion for new
trial, he also moved to withdraw. 

 Counsel appointed to represent an indigent defendant is bound to continue to
represent that defendant until "charges are dismissed, the defendant is acquitted, appeals
are exhausted, or the attorney is relieved of his duties by the court or replaced by other
counsel." Tex. Code Crim. Proc. Ann. art. 26.04(a) (Vernon 1989); Massingill v. State, 8
S.W.3d 733, 735 (Tex. App.-Austin 1999, no pet.). The responsibilities of court-appointed
counsel do not automatically terminate at the conclusion of trial. Ward v. State, 740 S.W.2d
794, 796 (Tex. Crim. App. 1987); Massingill, 8 S.W.3d at 735. An attorney may not
withdraw without the permission of the trial court, and the appointed attorney remains
defendant's counsel unless he is expressly permitted to withdraw. Ex parte Axel, 757
S.W.2d 369, 373-74 (Tex. Crim. App. 1988); Ward, 740 S.W.2d at 797-98; Fowler v. State,
874 S.W.2d 112, 114 (Tex. App.-Austin 1994, pet. ref'd). 

 It is well established that an accused is not entitled to hybrid representation, i.e., to
proceed pro se and be represented by an attorney at the same time. Meyer, 27 S.W.3d at
648; (5) Stelbacky v. State, 22 S.W.3d 583, 586 (Tex. App.-Amarillo 2000, no pet.). Once an
accused is represented by counsel, the trial court is entitled to look solely to the accused's
counsel and is not required to consider motions filed pro se during the period the accused
was so represented. Meyer, 27 S.W.3d at 648.

 In the present case, while counsel may have moved to withdraw, absent express
permission to withdraw given by the trial court, counsel continued to represent the accused. 
The trial court can, and did, properly look solely to counsel in these circumstances, and it
is not required to consider any pro se filings. This issue is overruled.

The "Entrapment" Defense

 Mitchell's sixth issue reads as follows: "Did the trial court abuse it's [sic] discretion
in denying Appellant his right to present witnesses at his entrapment hearing, at trial, and
refused to allow the perfection of a bill of exception."

 Mitchell's seventh issue also complains of the trial court's failure to conduct a pretrial
hearing on his entrapment claim.

 Mitchell filed a trial brief pro se, outlining his proposed defense of entrapment in
which he claims that the guards and the State attempted to retaliate against him because
he was a "writ writer"; that, "inexplicably," he became a target for an inmate gang that
attempted to extort money from him; that his attempts to go through proper channels within
the prison system were unavailing; and that he was repeatedly told by prison guards to
defend himself. He further contended that he was given a "steel bar" by a "law enforcement
agent" and told to defend himself. (6) 

 Tex. Pen. Code Ann. § 8.06(a) (Vernon 1994) sets forth the requirements for
establishing the defense of entrapment:

 It is a defense to prosecution that the actor engaged in the conduct charged
because he was induced to do so by a law enforcement agent using
persuasion or other means likely to cause persons to commit the offense. 
Conduct merely affording a person an opportunity to commit an offense does
not constitute entrapment. (7)

 

 As a "defense" under Tex. Pen. Code Ann. § 2.03 (Vernon 1994), the issue is not
submitted to the jury unless evidence is admitted supporting the defense. 

 Under Tex. Code Crim. Proc. Ann. art. 28.01, § 1 (Vernon 1989), a trial court may
set any criminal case for a pretrial hearing in order to determine, among other things, the
defense of entrapment. The use of the word "may" ordinarily connotes discretion or
permission, and it will not be treated as a word of command unless there is something in
the context or subsequent matter to indicate its usage in that sense. State v. Garza, 931
S.W.2d 560, 563 (Tex. Crim. App. 1996). There is nothing in this particular article of the
code to indicate that holding a pretrial hearing on the defense of entrapment is mandatory. 
We also note:

 [T]he defense of entrapment may be determined before trial. Here the
defendant has the burden to establish as a matter of law that he was
entrapped into committing the offense, and if he does so the case will be
dismissed. If a disputed factual issue is raised the defense must be
presented to the jury [or trier of facts] during the trial as any other defense.

 

7 Michael J. McCormick et al., Texas Practice: Criminal Forms and Trial Manual
§ 54.01 (10th ed. 1995) (emphasis added).

 At the pretrial hearing, Mitchell, acting pro se, brought his request for a pretrial
hearing on entrapment to the attention of the trial court, and the trial court denied his
request. Although the trial court could have permitted Mitchell to call witnesses at such
hearing, it was not obligated to do so. Even had Mitchell been allowed to produce his
witnesses, unless the trial court ruled that he established entrapment as a matter of law, he
would have still been required to call them at trial. Mitchell testified on his own behalf at
trial. He did not testify as to the matters set forth in his pretrial motion concerning
entrapment. Since there was no evidence of entrapment presented at trial, there was no
necessity for giving an instruction on this defense. Mitchell's sixth and seventh issues are
overruled. 

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: October 31, 2001

Date Decided: November 1, 2001


Do Not Publish

1. The indictment states that the offense occurred on October 24, 1996. However,
as we previously stated, "pre-indictment" time is not considered in computation of length
of delay. See United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).
2. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). 
This standard was adopted as the standard for such claims made under the Texas
Constitution. Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). 
3. The record in a direct appeal may contain a less than adequate inquiry into the
possible tactical reasons for counsel's acts or omissions and may lack completely
counsel's own explanation for such conduct. For that reason, the courts recognize that
direct appeal is often an inappropriate forum for ineffective assistance claims. However,
we are not foreclosed from doing so. Thompson v. State, 9 S.W.3d 808, 813-14 nn.5-6
(Tex. Crim. App. 1999). 
4. On cross-examination, the prosecutor asked Mitchell about his prison disciplinary
record, which included being "out of place," masturbating in front of female prison
employees, masturbating while in a van being transported to court, other instances of
masturbation, threats to guards, and spitting in a guard's face. 
5. In its discretion, the trial court may permit hybrid representation. Scarbrough v.
State, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989).
6. In his trial brief, Mitchell cites Garcia v. State, 528 S.W.2d 604 (Tex. Crim. App.
1975), in which we find the following language, which apparently forms the basis of
Mitchell's entrapment defense:


 Appellant complains of the exclusion of evidence which would show
he had been working with law enforcement officers in the investigation of a
murder conspiracy case and that because of threats on his life and attempts
on the lives of other witnesses in the case, he had been told by law
enforcement officers involved in the case to arm himself.


Id. at 604.


 Surely the officers did not induce this appellant to arm himself for the
purpose of catching him so that they could prosecute him. This would be
entrapment.


Id. at 605 (Morrison, J., concurring).
7. Tex. Pen. Code Ann. § 8.06 (Vernon 1994) requires an accused who claims
entrapment to produce evidence that he was actually induced to commit the charged
offense; that is to say, he committed the offense because he was induced to do so. As
such, the defense contains both an "objective" and a "subjective" component. England v.
State, 887 S.W.2d 902, 913 (Tex. Crim. App. 1994). 


ass=MsoNormal>Tex. Code Crim. Proc.
Ann. art. 42.12, § 9 (West Supp. 2010). 

 

            The
transcript was attached to the report of the supervision officer, who provided
a separate summary of the calls recited above which was not specifically
objected to.  Due to the language in the
Texas Code of Criminal Procedure referencing PSIs, Texas courts have held that
the Texas Rules of Evidence do not apply to the contents of a PSI, which often
contain information that would otherwise be inadmissible under the Texas Rules
of Evidence.  Stringer v. State, 309 S.W.3d 42, 46 (Tex. Crim. App. 2010) (citing
Fryer v. State, 68 S.W.3d 628, 631
(Tex. Crim. App. 2002)). The statute further authorizes a defendant to
introduce testimony or other information alleging a factual inaccuracy in the
report.  Tex. Code Crim. Proc. Ann. art 42.12, § 9(e).  Ellison denied making some of the statements,
stated that some were out of context and that some were merely sarcasm or
attempts at humor.  We cannot conclude the
trial court abused its discretion in admitting the transcript. 

            We overrule
this point of error.  

 

II.       Ellison Failed to Preserve Due Process
Complaint

 

            Ellison also complains,
in the same point of error, that admitting the transcript violated due process
because the transcript entries do not support criminal responsibility for the
extraneous misconduct by Ellison to any level of confidence.  The trial court erred by considering criminal
responsibility for the extraneous conduct contained in the transcript attached
to the PSI.  He relies on Smith v. State, 227 S.W.3d 753, 763
(Tex. Crim. App. 2007), in which the court held when referencing PSI
admissibility that a trial court is not prohibited 

as
a sentencing entity, from considering extraneous misconduct evidence in
assessing punishment just because the extraneous misconduct has not been shown
to have been committed by the defendant beyond a reasonable doubt, if that
extraneous misconduct is contained in a PSI.

 

But the court clarified:

 

We
think it obvious that it would violate due process for a trial court to
consider evidence of extraneous misconduct, even contained in a PSI, if there
was no evidence from any source from which it could be rationally inferred that
the defendant had any criminal responsibility for that extraneous misconduct.

 

Id. at 764.  Ellison did not
challenge at trial that the transcript contained extraneous misconduct
evidence.  The complaints were to the
accuracy of the transcript and that the transcript did not identify anybody.  Now, he complains that due process was
violated because there was no evidence from any source from which it could be
rationally inferred that Ellison had any criminal responsibility for the
conduct in that transcript.[1]  

            We find no
indication in the record that Ellisons due process argument was presented to
the trial court.  Due process complaints
must be preserved for appeal.  Tex. R. App. P. 33.1(a); Shipp v. State, 292 S.W.3d 251, 261
(Tex. App.─Texarkana 2009, no pet.).  The objections asserted at trial
complained of the transcripts authentication. 
Points of error on appeal must correspond or comport with objections and
arguments made at trial.  Wright v. State, 154 S.W.3d 235, 241
(Tex. App.Texarkana 2005, pet. refd) (citing Dixon v. State, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998)).  Where a trial objection does not comport
with the issue raised on appeal, the appellant has preserved nothing for
review.  Id.; see Tex. R. App. P. 33.1; Ibarra v. State, 11 S.W.3d 189, 197
(Tex. Crim. App. 1999).   

            Ellisons
last point of error is overruled. 

 

III.      Conclusion 

 

            We
affirm the judgment of the trial court. 

 

 

 

 

                                                                                                Jack
Carter

                                                                                                Justice

 

Date Submitted:          October
28, 2011

Date Decided:             November
15, 2011

 

Do Not Publish

 

 

 

 











[1]Moreover,
Bean testified at the hearing that the only thing [Ellison] would tell me on
the telephone was Is [sic] never see my daughter again unless I learned to
mind.  He told me that hed kill me, he
would kill himself, he would kill anybody involved to keep her away from me
because I didnt learn to mind. . . . When he gets out he will kill me.