Charles Bernard GAFFNEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–95–00161–CR.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 1, 1996.

Decided Oct. 30, 1996.

Opinion Overruling Rehearing Feb. 19, 1997.

Discretionary Review Refused May 7, 1997.

Gary L. Waite, Sydney Young, Paris, for appellant.

Tom Wells, County Attorney of Lamar County, Deane A. Loughmiller, Assistant District Attorney, Paris, for appellee.

Before CORNELIUS, C.J., and GRANT and STARR, JJ.

## OPINION

GRANT, Justice.

Charles Gaffney appeals in this case from his conviction for the offense of aggravated kidnapping of William Walker. In two companion cases, also on appeal before this Court, he was convicted of the robbery of Walker and the aggravated robbery and aggravated kidnapping of Jeff Moore. The three cases before this Court were tried together and are intertwined factually and procedurally.

In this appeal, Gaffney contends that his conviction should be reversed because (1) there is insufficient evidence to prove the aggravated kidnapping of William Walker; (2) the trial court erred by overruling his motion to testify without being impeached by proof of a prior conviction; and (3) the prosecutor's jury argument was so improper as to require reversal.

The final two points are identical to arguments raised in the companion appeal No. 06-95-00159-CR, and for the reasons stated in that opinion, those arguments are overruled in this case.

Gaffney contends that there is factually and legally insufficient evidence to support his conviction for aggravated kidnapping. In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), and *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim.App.1991), to see whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

In our review of the factual sufficiency of the evidence, we view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App. 1996); *Lisai v. State*, 875 S.W.2d 35, 37 (Tex.App.—Texarkana 1994, pet. ref'd).

Gaffney contends that the evidence is legally and factually insufficient because it fails to prove that an abduction occurred. He specifically argues that there was no evidence that he restricted Walker's movements, intended to prevent his liberation, or used or threatened to use deadly force. "Abduct" is defined as "to restrain a person with intent to prevent his liberation by (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." TEX. PENAL CODE ANN. § 20.01(2) (Vernon 1994).

The indictment against Gaffney alleges that he

did then and there unlawfully, knowingly and intentionally with the intent to rob William Walker, did then and there intentionally and knowingly, abduct William Walker by restricting the movements of the said William Walker without his consent, by moving him from one place to another where he was not likely to be found with the intent to prevent his liberation by using or threatening to use deadly force, namely: a firearm.

Reviewing the conduct of Gaffney in the companion case in which Moore was the victim, the evidence shows that Gaffney threatened Moore with a pistol and demanded money. Gaffney used the same modus operandi in making his contact with Walker later that same night as he had with Moore, the victim in the companion case decided this day by this Court. He received a ride in Walker's car, using the pretext he used with Moore that he needed gasoline. Based upon the conduct of demanding money and brandishing a pistol, on that same night, Gaffney might also be expected to do the same with

Walker. According to Walker's testimony, however, the same conduct did not occur. Although the record is clear that Walker was in fear, we must look at Gaffney's conduct to see if the evidence shows beyond a reasonable doubt that Gaffney restricted Walker's movements by restraining him with intent to prevent his liberation. Threats can be determined on the basis of a logical inference as well as direct testimony.

According to Walker's testimony, he willingly let Gaffney into his car to take him to get gasoline for Gaffney's car. They introduced themselves to each other, and Walker got his homestyle burger and fries at a drive-through McDonald's (from a girl he knew) before they went after gasoline. Throughout Walker's testimony, he testified that Gaffney *asked* him to do various things. He never testified that he was commanded or ordered to do anything or go anywhere. Walker specifically testified that "he wasn't commanding me to go anywhere. I was just following directions as if I was taking somebody home."

Walker testified that he was suspicious of Gaffney when he got into the car, but he reasoned "[I]f he were a criminal and someone that was going to hurt me or do something bad, he's already in my car, it's too late. If he's not, then what difference does it make."

Walker testified that while on the way to get a gas can, Gaffney mentioned that he was going to take care of some business, "and he was going to Glock[1] some people." According to Walker, "Most people know that means kill them." It was at that point that Walker asked Gaffney if he had a gun, and Walker answered that he did and patted his right hip, saying that he had a Glock. Walker asked Gaffney to let him see the gun. Gaffney did not produce a gun. Walker testified that throughout the episode he never saw a gun. Walker described Gaffney's attitude as nervous. "He's [Gaffney] not friendly and courteous but he's not ... threatening me," Walker said, and then added, "He took on threatening attitudes but he never made a

direct threat, unless you consider him telling me that he has a Glock for no apparent reason a threat."

Walker reached the conclusion that his freedom and movements were restricted by Gaffney's threats and "con." He described the con as Gaffney's representing that he needed gasoline in order to get a ride in his car. He concluded the reason that he did not leave was because of the intimidation with the weapon.

At one point, a half hour after Walker let Gaffney into his car, Gaffney asked Walker what time he had to be home, and Walker responded that he did not have to be home at any designated time. According to Walker's testimony, Gaffney told him he could go home any time he wanted to, but Walker said that for some reason that did not seem to be the case. He never offered a reason other than Gaffney's claim to have a pistol. When Walker's money ran out, Gaffney wanted Walker to write a check to buy drugs, which Gaffney proposed they sell and split the proceeds. Walker did not write a check for the large amount requested, but later agreed to write a check for $70.

Walker testified that they cruised through a neighborhood with the windows down and that Gaffney drank beer and played the radio as loud as it would go and with "about as much bass as it could handle." He testified that they went to some parts of town where drugs were sold.

They met a man named Nooney, and Walker testified that, "I told him my name was Will. He seemed nice enough." Walker testified that Gaffney asked him if Walker minded if they stopped while he and Nooney smoked. Gaffney offered him a smoke of crack, but Walker refused. Nooney advised him not to try these drugs. Walker testified that they used his money to buy the crack. Again, this was not phrased by Gaffney as an order or demand.

There was testimony about stops at which Gaffney left the car. Walker drove during the episode and testified that he could have

---

**1.** Glock is a brand name (and registered trademark) of a semi-automatic pistol employing the use of polymer technology in its construction.

driven away on a number of occasions. At one point, Gaffney went into a store and was there for what Walker said was probably five minutes and came back with a six-pack of Red Dog beer. Walker testified that he did not leave in the car because he did not want a bullet in the back of his head and because he did not want to go home and have to call the police about the incident, wondering if Gaffney was outside or somewhere. He also mentioned fear for his family during this testimony.

Walker and Gaffney went to Kroger's to cash the check, but Kroger's would not cash the check for them. At the next store in which Gaffney and Walker went to cash the check, Walker told one of the workers to call the police. Walker testified that as he walked past Gaffney, Gaffney was just standing there, "and it doesn't look like he [Gaffney] thinks anything is up." Walker told the manager that Gaffney was using his money to buy crack. When the policeman arrived, he asked Walker if he was kidnapped, and Walker answered yes. Walker testified that he told the police that in his socks he had a crack pipe that Gaffney had given him when a policeman had passed them earlier. The entire episode lasted approximately seven hours.

Gaffney testified to a version of the occurrence that was contrary in most relevant aspects to the testimony of Walker. He also offered witnesses who said that he and Walker had been friends or acquaintances prior to this incident. The jury apparently chose to disbelieve this version of the occurrence.

■ Kidnapping becomes a completed offense when the restraint is accomplished and there is evidence that the actor intended to prevent liberation, either by secreting or holding a victim in a place not likely to be found or using or threatening use of deadly force. *Mason v. State,* 905 S.W.2d 570 (Tex. Crim.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 717, 133 L.Ed.2d 670 (1996); *see also* TEX. PENAL CODE ANN. § 20.01(2). The statute requires that a person's movements without the person's consent must interfere substantially with his liberty by moving him from one place to another or by confining him. The restraint is without consent if it is

accomplished by force, intimidation, or deception. TEX. PENAL CODE ANN. § 20.01(1) (Vernon 1994).

In the present case, the indictment alleges deadly force was used to move Walker from one place to another where he was not likely to be found. The record does not show that Walker was isolated or secreted in a place where he was not likely to be found. He was in contact with numerous other people in the course of the episode, his own testimony indicates that he could have driven away on a number of occasions, and he drove up and down the streets with the windows down and the radio turned up to top volume. All the evidence is antithesis of being secreted or isolated. They did move from place to place in different parts of the city, but was this the result of deadly force being threatened by Gaffney?

■ Threats may include acts amounting to an offer to use future force. *Seaton v. State,* 564 S.W.2d 721, 724 (Tex.Crim.App. [Panel Op.] 1978). But in the present case, Gaffney made no actual threats of present or future force toward Walker. A threat to use deadly force to abduct a person in the context of kidnapping can be communicated by words alone, separate and apart from exhibiting a deadly weapon. The cases standing for this principle, however, are cases in which there was a direct threat or violence to the victim. *See Rogers v. State,* 550 S.W.2d 78 (Tex.Crim.App.1977); *Ramirez v. State,* 692 S.W.2d 729 (Tex.App.—Waco 1985, no pet.). In the present case, Gaffney never directly threatened Walker. In *Wiley v. State,* 820 S.W.2d 401 (Tex.App.—Beaumont 1991, no pet.), the court approved a veiled threat accompanied by the defendant's repeatedly striking the victim in the face with his fist and seriously damaging his truck until he handed over some money to the defendant. In the present case, no violent acts of any type were attributed to the defendant. *See* TEX. PENAL CODE ANN. § 20.01(2)(B).

■ Walker's testimony that he was intimidated by Gaffney's representation that he had a Glock and was going "to Glock" some people and his conclusion that this restricted his freedom and movements when taken in a

light most favorable to the verdict is legally sufficient to support the jury's finding. The evidence, however, when not viewed in a light most favorable to the prosecution is not sufficient to support the finding of guilt of aggravated kidnapping. Walker's conclusion that his restraint was accomplished by the threat of the use of deadly force was undermined in many ways. There was never any threat of the use of deadly force against Walker. He inferred a threat from the fact that Gaffney suggested that he was going to Glock some people with no time, place, or specific persons indicated. However, Gaffney did not volunteer that he had possession of a Glock, but only admitted this after being questioned on the matter by Walker. Then Walker in a verbal act that does not suggest intimidation, asked to see the weapon, and Gaffney in an unthreatening manner, refused to show him. By Walker's own admissions, Gaffney told him that he could go home at any time, that he was not prohibited from talking to other people, and could have driven away on a number of occasions when Gaffney was not in the vehicle. He further testified that he was never ordered to do anything. There was no evidence that he was ordered to stay a certain place or to go to a certain place, or that there was any restraint upon his movements, other than that inferred by him from the statement having been made by Gaffney. The actor in a kidnapping case must commit conduct that rises to the level of substantial restraint. This is not based solely on the conclusion of the victim, but must be viewed in light of the acts and events upon which the victim based his conclusion. According to Walker's testimony, there were no further acts such as threats, commands, confinement, force, or violence that suggested that Walker was being threatened by deadly force. The evidence, when not viewed in the light most favorable to the verdict, shows that it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The point of error on factual sufficiency is sustained.

The judgment of the trial court is reversed and remanded for a new trial.

## ON REHEARING

■ On rehearing, Gaffney points out that this Court did not address his argument that a new trial should be granted in all the cases when the court reversed any one of the charges for which he was simultaneously tried and convicted. Gaffney cites the case of *Gilbert v. State,* 781 S.W.2d 296, 299 (Tex. App.—Fort Worth 1988), *aff'd,* 808 S.W.2d 467 (Tex.Crim.App.1991). The ·*Gilbert* case involved the admission at trial of an extraneous offense which the appellate court found was more prejudicial than probative. The present case does not involve evidence of an extraneous offense, but involves evidence presented in one of the cases on trial, evidence which this Court found not to be factually sufficient.

Whether the evidence in any one of the cases joined together for trial would be sufficient was an unknown factor until the evidence had been submitted. These multiple cases were brought by separate indictments. If Gaffney had wished to preclude the jury from hearing the evidence in the other offenses, he had a right under TEX.PENAL CODE ANN. § 3.04 (Vernon 1994) to have these offenses severed and tried separately. When an appellant fails to object to the consolidation of indictments, he is deemed to have given his consent to a single trial. *Milligan v. State,* 764 S.W.2d 802 (Tex.Crim.App. 1989).

If the insufficient evidence brought out in the other offense was harmful on the trial of the remaining offenses, a fortiori, sufficient evidence would have been even more harmful. The defendant cannot wait until the trial is over to decide if he wishes the cases severed, and strong evidence of a conviction in the other offense would be calculated in any situation to be more harmful than insufficient evidence.

■ On rehearing, Gaffney also complains that this Court made reference to the disposition on appeal in the companion case 06–95–00159–CR in determining whether the trial court's admitting evidence of prior felony convictions for impeachment had prejudicial effect that outweighed the probative value. *See* TEX.R.CRIM.EVID. 609(a). The opinion in 06–95–00159–CR, 937 S.W.2d 540authored by

Justice Larry Starr, focused on the factors set forth in *Theus v. State*, 845 S.W.2d 874, 881–82 (Tex.Crim.App.1992). It is not necessary to reach this determination in the present case because the State did not introduce this evidence or bring it out on cross-examination, but the defendant elected to bring the matter out by the defendant's own testimony during direct examination. This was after a motion in limine seeking to exclude these offenses from evidence had been overruled by the trial court. Certainly, the defendant had a right as trial strategy to introduce this evidence on his own volition, but the mere fact that a motion in limine has been overruled does not mean that the trial court may not change the ruling during the course of the trial or that the State will actually offer this evidence. The general rule is that a motion in limine does not preserve error. *Gonzales v. State*, 685 S.W.2d 47 (Tex.Crim. App.1985). In the cases of *Morgan v. State*, 891 S.W.2d 733 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd), and *Whitaker v. State*, 909 S.W.2d 259 (Tex.App.—Houston [14th Dist.] 1995, no pet.), the courts specifically addressed motions in limine for prior convictions. The courts in these cases held that a defendant must testify in order to raise and preserve a claim of improper impeachment through prior convictions. In both these cases, after the ruling on the motion in limine, the defendants failed to testify. In the present case, the defendant testified, but raised the issue himself by his testimony.

■ The question is whether self-impeachment by introducing the prior offenses on his own volition preserves error. We hold that it does not. To hold otherwise would be to allow the ruling on the motion in limine alone to preserve error.

■ We hold that by introducing this evidence, Gaffney waived any objection as to its admissibility.

The motion for rehearing is overruled.