In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00146-CR


______________________________




JESSICA WRIGHT GERLOFF, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 8th Judicial District Court


Franklin County, Texas


Trial Court No. 7731




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Ross



MEMORANDUM OPINION



 Jessica Wright Gerloff appeals from her conviction by a jury for the capital murder
of Corbin Gerloff, her infant son. Her punishment was automatically assessed at
imprisonment for life, (1) and she was sentenced accordingly. On appeal, she contends: 1) a
statement in which she confessed to the murder was involuntary and therefore
inadmissible; 2) there was no evidence she intentionally harmed the child; and 3) the trial
court erred by denying her motion for continuance.

 To provide a context for our review, we briefly set out the facts of this case. Deputy
Sheriff Kirby Gerald responded to a medical emergency call at a home. On arrival, he
found Dewayne Gerloff doing CPR on Dewayne (2) and Jessica's two-month-old son, Corbin,
who was lying on the floor by the door. Gerald assisted until medical personnel arrived and
took the child to the hospital. Jessica arrived home and then went to the hospital. The
evidence showed that the child had a bruise on his back and blood in his diaper, and
medical testimony was that he had died after suffering a blunt force trauma to the head
and fractured ribs. 

 Both Dewayne and Jessica were arrested. Dewayne was ultimately charged with
causing injury to the child by failing to seek medical attention. He pled guilty to the offense
and was sentenced to prison. Jessica was charged with the murder. She gave a written
statement in which she confessed that she "kinda forcefully hard put him on the couch. 
I had him underneath his armpits and put him on the couch. I guess that might have been
when his ribs were crushed & he got the head trauma." She also stated the infant died at
approximately 2:30 p.m. At the time, Dewayne was not at the house; he returned from
seeking employment at approximately 3:00 p.m. Jessica left (according to her statement)
at approximately 4:45 p.m. to pick up another woman from her job (whose young children
Jessica was keeping). Dewayne called for assistance at 5:30 p.m. 

 Jessica first contends the court erred by admitting her statement because, at the
time she gave the statement, she was ill, under great stress, and depressed. She also
argues she was under the false impression that giving her statement would get her
husband out of jail. Jessica filed a motion to suppress the statement. The court conducted
a hearing on her motion, outside the presence of the jury, during the trial. The testimony
at that hearing showed that Jessica had voluntarily presented herself at the police station
stating she wanted to talk to someone about the death of her child. Although Jessica was
not then under arrest, the officer who took the statement gave her the required warnings, (3)
and Jessica then gave the written statement at issue. 

 Jessica's counsel asked the officer several questions focused on the way in which
he interacted with Jessica while she was writing the statement. None of the issues now
raised on appeal were placed before the trial court for consideration. Jessica's issue and
argument on appeal does not comport with her initial objections. Thus, they were not
preserved for our review. See Tex. R. App. P. 33.1; Mumphrey v. State, 155 S.W.3d 651,
656 (Tex. App.--Texarkana 2005, pet. ref'd). The contention of error is overruled.

 Jessica next contends the evidence is insufficient to show intent to harm. Intent
may be directly proven, or it may be inferred from circumstantial evidence such as acts,
words, and the conduct of the appellant. Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim.
App. 2004). Jessica contends the evidence may show recklessness, but does not rise to
the level of showing that she intentionally killed her child. The jury was provided with the
options of capital murder, manslaughter, or criminally negligent homicide, and was
provided with the necessary definitions and instructions for those allegations.

 In reviewing the legal sufficiency of the evidence, we view the relevant evidence in
the light most favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

 In a factual sufficiency review, the appellate court views all the evidence in a neutral
light and determines whether the evidence supporting the verdict is so weak that the jury's
verdict is clearly wrong and manifestly unjust or whether the great weight and
preponderance of the evidence is contrary to the verdict. Id.; see Watson v. State,
No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040, (Tex. Crim. App. Oct. 18, 2006); Clewis
v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

 The jury was charged that a person acts intentionally, or with intent "when it is his
conscious objective or desire to engage in the conduct or cause the result." See Tex.
Penal Code Ann. § 6.03(a) (Vernon 2003).

 Walter Kemp, M.D., a forensic pathologist who performed the autopsy on Corbin's
body, testified that Corbin (although with no skull fractures) had brain hemorrhaging and
bleeding around the optic nerve as the result of head trauma and that Corbin had multiple
rib fractures. Kemp stated that Corbin's injuries were consistent with shaken baby
syndrome and that Corbin died sometime between minutes to six hours after the injuries
were inflicted. Kemp further stated that all the injuries were very recent and were inflicted
at the same time. The head trauma would alone be lethal, and he testified that the
fractured ribs could also cause or contribute to the death. He testified that all the injuries
were consistent with holding the baby under the armpits, shaking him, and putting him
down in a forceful manner on something like a sofa. Kemp emphasized that normal
handling could not cause such a result, nor even accidental drops from a low height--such
injuries require a "significant" amount of force to be applied. 

 There was also testimony that Jessica called a long-time family friend, Christine
Adams, and told her that she had confessed to the murder and that she had killed her
son. (4)

 This evidence is supportive of a conclusion by the jury that it was Jessica's
conscious desire to engage in that conduct. It does not necessarily require the intent to
cause the result: death. It only requires that the action itself be intentionally done. 
Further, the charge also allowed conviction for capital murder if the act was done knowingly
or with knowledge. 

 A person acts knowingly or with knowledge, with respect to the nature of his or her
conduct when that person is aware of the nature of the conduct. A person acts knowingly,
or with knowledge, with respect to a result of his or her conduct when that person is aware
that the conduct is reasonably certain to cause the result. See Tex. Penal Code Ann.
§ 6.03(b) (Vernon 2003). The evidence would also support a conclusion that Jessica acted
knowingly when she took the actions--and there is evidence that those actions resulted
in the child's death. 

 The arguments to the contrary consist of nothing more than speculation and
surmise. There is no evidence to connect Dewayne, or any other person, to the injuries
to the child. The evidence is legally and factually sufficient to support the verdict.

 Jessica next complains that the court erred by denying her motion for continuance
so that she could attempt to obtain additional witnesses. The two witnesses had been
subpoenaed for a prior setting, but no additional subpoenas had been issued for the
instant trial, and the witnesses did not appear. The motion for continuance was made
orally. The Texas Court of Criminal Appeals has held specifically that a motion for
continuance must be made in writing, and must be sworn--otherwise, any complaint is
waived. Dewberry v. State, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999). The contention
has not been preserved for our review.

 We affirm the judgment.




 Donald R. Ross

 Justice


Date Submitted: August 14, 2006

Date Decided: November 21, 2006


Do Not Publish

1. See Tex. Penal Code Ann. § 12.31(a) (Vernon Supp. 2006). 
2. To avoid confusion, we will use first names for those persons with a common last
name.
3. See Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (Vernon 2005).
4. In an odd statement, Adams testified that Jessica called her, crying and very, very
upset, and said, "I wrote a written confession. I said, do what. She said, I wrote a written
confession. I killed Corbin. I said why are you saying that, why did you do that. She told
me that God made her do it and that Dewayne was God. And I didn't want to hear
anymore." Adams further testified that Jessica had Dewayne "wrapped around her finger,"
that Dewayne was not a controlling personality, and that she could make no sense of the
"God" statement at all.


done" and that he believed the cocaine found in the car belonged to Jones, one of the
other occupants. According to Andrews, Jones remained in the vehicle for "quite some time" after
Andrews had exited the car pursuant to Officer Clark's instruction to do so. Although Andrews
admitted to his addiction to cocaine, he denied having used cocaine on the night he was arrested. 

 The great weight and preponderance of the evidence does not establish that the jury's verdict
is clearly wrong or manifestly unjust. Reconciliation of conflicts in the evidence is within the
exclusive province of the jury as the sole judge of witness credibility. Clewis, 922 S.W.2d at 
132 n.10. The jury was not required to believe Andrews's version of events and the evidence is not
so weak that the jury's verdict is clearly wrong. The fact that the State did not present evidence of
every conceivable link which the courts have recognized as being pertinent or affirmative ties does
not lead us to conclude that the evidence is factually insufficient. "Although an appellate court
reviewing factual sufficiency has the ability to second-guess the jury to a limited degree, the review
should still be deferential, with a high level of skepticism about the jury's verdict required before a
reversal can occur." Roberts, 220 S.W.3d at 524. We are unable to reach the high level of
skepticism required to reverse the jury's verdict. Andrews's second point of error is overruled.

Ineffective Assistance of Counsel

 In his final point of error, Andrews contends that he received ineffective assistance of
counsel. To succeed on appeal in raising a claim that one's trial counsel provided ineffective
assistance, an appellant must demonstrate by a preponderance of the evidence (1) that counsel's
representation fell below an objective standard of reasonableness and (2) that this deficient
performance prejudiced the appellant's defense. Strickland v. Washington, 466 U.S. 668, 687 (1984);
Andrews v. State, 159 S.W.3d 98, 100-01 (Tex. Crim. App. 2005); Bone v. State, 77 S.W.3d 828,
833 (Tex. Crim. App. 2002). 

 Under Strickland, the appellant "must prove that counsel's representation so undermined the
proper functioning of the adversarial process that the trial cannot be relied on as having produced
a just result." Strickland, 466 U.S. at 686; Mosley v. State, 141 S.W.3d 816, 826 (Tex.
App.--Texarkana 2004, pet. ref'd). The appellant must meet his burden as to both prongs of the
Strickland test; should the proof fail as to either, then we must overrule the claim of ineffective
assistance. Mosley, 141 S.W.3d at 825-26. For example, under Strickland's first prong, if we can
envision a legitimate trial strategy to explain counsel's alleged ineffectiveness, then we are precluded
from sustaining the appellant's claim of reversible error. See Goodspeed v. State, 187 S.W.3d 390,
392-93 (Tex. Crim. App. 2005).

 We begin our analysis of an ineffective assistance claim with the presumption that counsel
performed competently at trial. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We
also presume that counsel's decisions were reasonably professional and were motivated by sound trial
strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In the absence of direct
evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic
motivation if any can be imagined. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). 
We will not conclude that the challenged conduct constitutes deficient performance unless the
conduct was so outrageous that no competent attorney would have engaged in it. Id.; see Thompson,
9 S.W.3d at 814. 

 Andrews argues that he received ineffective assistance of counsel because his trial counsel
failed to object to inadmissible impeachment evidence. Specifically, Andrews claims that some of
the convictions elicited by the State were too remote in time to be admissible as impeachment
evidence and that the State solicited details concerning prior convictions (such as the sentences
which were assessed and the underlying facts) which were inadmissible. 

 On direct examination, Andrews preemptively admitted to numerous prior convictions in an
attempt to minimize any damage. (8) As mentioned previously, Andrews admitted to at least four
convictions for possession of less than one gram of a controlled substance since 1997. On cross-examination, Andrews admitted to having been arrested for possession of crack cocaine in his car
and at his house on "many" occasions. In addition, Andrews admitted on cross-examination to
having been convicted of delivery of a controlled substance in 2003. The State also questioned
Andrews concerning a 1976 conviction for the burglary of a habitation (for which he received an
eleven-year sentence) as well as a conviction for possession of a controlled substance in 1996. 

 When a defendant voluntarily testifies before a jury, he is subject to the same rules governing
cross-examination as any other witness. See Bryan v. State, 837 S.W.2d 637, 643 (Tex. Crim. App.
1992). However, Rule 608(b) of the Texas Rules of Evidence provides that specific instances of a
witness's conduct may not be the subject of inquiry on cross-examination of the witness for the
purpose of supporting or attacking the witness's credibility except for impeachment of the witness
regarding a conviction of a crime as provided in Rule 609. See Tex. R. Evid. 608, 609. Under Rule
609(b), impeachment of this nature has its limits; a prior conviction is presumed to be too remote
after ten years from the date of conviction or the release of the witness from custody (whichever is
the later date). Tex. R. Evid. 609(b); Jackson v. State, 50 S.W.3d 579, 591 (Tex. App.--Fort Worth
2001, pet. ref'd). Nevertheless, even convictions which are presumed to be remote may be admitted
should the court determine that, "in the interests of justice" and under "specific facts and
circumstances," the probative value of the conviction substantially outweighs its prejudicial effect. (9) 
Tex. R. Evid. 609(b). Whether to admit remote convictions lies within the trial court's discretion
and depends on the facts and circumstances of each case. Jackson, 50 S.W.3d at 591. Trial counsel
may have reasonably concluded that an objection based on remoteness would be overruled, believing
it possible that the probative value under these circumstances substantially outweighed the
prejudicial effect, rendering such an objection futile.

 Even making the assumption (which we do not) that the specific details concerning
Andrews's prior convictions were subject to valid objections had they been interposed, counsel may
have decided not to object to this evidence for reasons of trial strategy. When, as in this case, trial
counsel's reasons for the challenged conduct do not appear in the record, we will assume a strategic
motivation if any can be imagined. Garcia, 57 S.W.3d at 440. The strategy of trial counsel may
have been to convince the jury his client was being open and forthright, not attempting to conceal
any evidence from the jury. It is common lore, and trial counsel may have believed, that a jury
prefers to hear the full story and that a jury often may resent what it perceives as efforts to restrict
the evidence it hears. Based on this strategy, trial counsel may have decided to withhold objections
so as to prevent the jury from developing an impression that counsel was being overly litigious and
objecting at every possible opportunity in an effort to stonewall evidence. Ineffective assistance of
counsel claims cannot be "built on retrospective speculation." Bone, 77 S.W.3d at 835. 

 Further, ineffective assistance of counsel claims must be evaluated based on the totality of
the circumstances. Strickland, 466 U.S. at 693. "Isolated failures to object to certain procedural
mistakes or improper evidence or argument do not constitute ineffective assistance of counsel." 
Wenzy v. State, 855 S.W.2d 52, 53 (Tex. App.--Houston [14th Dist.] 1993, pet. ref'd). Andrews was
not entitled to errorless counsel. See Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App.
1990). Andrews has failed to show, under the totality of the circumstances, that his trial counsel's
performance was so outrageous that no competent attorney would have engaged in it. Trial counsel's
performance was not shown to be deficient.

 Finally, Andrews failed to meet the second prong of Strickland. Other than claiming that the
harm is "obvious and clearly contributed to the conviction," Andrews fails to make any effort to
prove "reasonable probability" that the result of the trial would have been different if counsel had
taken the steps which Andrews now says he should have taken. Even had Andrews shown the
performance of trial counsel was deficient, Andrews has failed to show a "reasonable probability"
that, absent trial counsel's alleged errors, the end result of the trial would have been different. "It is
critical that an appellant demonstrate the record shows both the alleged deficiency(ies) and the
alleged prejudice." Bessey v. State, 199 S.W.3d 546, 555 (Tex. App.--Texarkana 2006, pet.
granted). We overrule Andrews's third point of error.

 We affirm the judgment.



 Bailey C. Moseley

 Justice


Date Submitted: August 28, 2007

Date Decided: September 5, 2007


Do Not Publish

1. Officer Clark testified the occupants of the blue Mercury and the occupants of the black
Toyota were inconsistent concerning whether they knew each other. The record suggests, but is
unclear, that there may have been a fourth occupant of the blue Mercury.
2. Karen Shumate, a chemist with the Texas Department of Public Safety, identified the pills,
based on their markings, as Oxybutynin chloride, a bladder control medication; Methocarbamol, a
muscle relaxant; Felodipine, a blood pressure medication; Zocor, a cholesterol medication,
Omeprazole, a stomach medication; a children's aspirin; and two unmarked pills, which were not
identified due to a lack of markings. Shumate testified the pills were most likely all prescription
drugs that are not illegal to possess with a prescription and are unlikely to be abused. Andrews
testified he had a prescription for all of the medications in the pill bottle. Andrews, a Vietnam
veteran, testified he was injured during the war and the injury has gotten progressively worse. On
his last medical visit before the trial, the doctors informed Andrews he had less than a year to live. 
Andrews testified that he had seventeen prescription drugs which he had to take every day and that
he would carry them around in a single pill bottle for convenience. 
3. The Texas Court of Criminal Appeals has indicated a preference for the term "links,"
reasoning that the modifier "affirmative" adds too much confusion within the context of a factual
sufficiency review. Evans v. State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).
4. The parties have not directed us to where in the record the ownership of the blue Mercury
is established. However, a rational juror could infer from the evidence that Andrews owned the car
in question. Andrews consistently refers to the car as "my car" and, when asked if he still owned the
vehicle, Andrews testified he had "sold it recently" because he is no longer able to drive due to his
medical conditions.
5. Andrews later clarified this testimony and explained he believed one could quit using crack
cocaine but would, nevertheless, always remain an addict.
6. The events in question occurred on or about November 26, 2004, and the trial in this case
occurred on February 21, 2007.
7. Although not clear from the record, Andrews suggested on redirect testimony that the ticket
he was "paying out" may not have been for the drug paraphernalia charge, but due to a "mix up or
oversight" or because the ticket had "been there for quite some time."
8. We note, when a defendant takes the stand and gratuitously testifies concerning certain
evidence, he opens the door to the prosecutor's use of such evidence. See Gaffney v. State, 940
S.W.2d 682, 687 (Tex. App.--Texarkana 1996, pet. ref'd) (op. on reh'g). The State does not argue
that Andrews opened the door.
9. Prior to the adoption of the Texas Rules of Evidence, it was commonly held that a
defendant's more recent convictions can revive an otherwise presumptively remote conviction. We
note that both the Fort Worth and Houston's First District Courts of Appeals have held that this
tacking doctrine exception has survived the adoption of the new Texas Rules of Evidence. See
Jackson, 50 S.W.3d at 591-92; Hernandez v. State, 976 S.W.2d 753, 755 (Tex. App.--Houston [1st
Dist.]), pet. ref'd, 980 S.W.2d 652 (Tex. Crim. App. 1998) (Womack, J., concurring on refusal to
grant State's petition for review). But see Hankins v. State, 180 S.W.3d 177, 180 (Tex.
App.--Austin 2005, pet. ref'd) (refusing to apply the "tacking doctrine"). Under the exception,
"[e]vidence of the lack of reformation through subsequent felony and certain misdemeanor
convictions may then cause the prior conviction to fall outside the general rule and not be subject
to the objection of remoteness." Jackson, 50 S.W.3d at 591. It is not necessary for us to decide in
this case whether the above exception survived the adoption of the Texas Rules of Evidence.