

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00199-CR

RICKEY DONELL WILLIAMSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 32127

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

# O P I N I O N

When Rickey Donell Williamson confronted Jaime Ramirez and his friend about disrespecting Williamson's girlfriend, the result was a brief, but violent, altercation between Williamson and Ramirez. The violent encounter ended when Williamson inflicted a deep, ten-inch gash to the left side of Ramirez' face with a box-cutting knife. Although Williamson maintained that he acted in self-defense, a Hunt County jury convicted him of aggravated assault with a deadly weapon and sentenced him to forty years' imprisonment. On appeal, Williamson complains that (1) the trial court erred in ruling that two prior convictions were admissible under Rule 609 of the Texas Rules of Evidence and (2) insufficient evidence supports the jury's rejection of his self-defense claim. Because we find that (1) Williamson waived his complaint regarding the admission of his two prior convictions and (2) sufficient evidence supports the jury's rejection of his self-defense claim, we affirm the trial court's judgment.

## I. Williamson's Rule 609 Complaint Was Waived

In his first issue, Williamson complains that the trial court erred in finding that evidence of two prior family violence assaults[1] was admissible to impeach his credibility under Rule 609 of the Texas Rules of Evidence. *See* TEX. R. EVID. 609(a). Under Rule 609(a), a trial court must admit a criminal conviction offered to impeach a witness' character for truthfulness if (a) the conviction was for a felony or a crime involving moral turpitude, (b) its probative value outweighs its prejudicial effect, and (c) it is elicited from the witness or shown by public record. TEX. R. EVID. 609(a); *see Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992) (setting forth a

---

[1]*See* TEX. PENAL CODE ANN. § 22.01(b)(2).

2

nonexclusive list of factors to be considered in weighing the probative value of a conviction against its prejudicial effect). Williamson argues that the trial court misapplied the *Theus* factors in determining that the two convictions were admissible. The State argues that Williamson waived this complaint because the evidence of the two convictions was elicited from Williamson in his direct testimony, not by the State. We agree with the State.

In this case, after the State rested from its case-in-chief, the State informed the trial court that it intended to use several prior convictions, including the two convictions that are the subject of his complaint, to impeach Williamson's credibility, if he chose to testify. After some discussion, the trial court considered the *Theus* factors and found that the two family violence assault convictions would be admissible if Williamson chose to testify. In his direct examination, Williamson testified that he had pled guilty to the offense of family violence assault in 2007 and to another family violence assault offense in 2008. Thereafter, the State did not offer the judgments of conviction for those offenses into evidence in the guilt/innocence phase of the trial.

We have previously held under similar facts that any complaint that evidence of a prior conviction was not admissible has been waived. *Gaffney v. State*, 940 S.W.2d 682, 687 (Tex. App.—Texarkana 1996, pet. ref'd) (op. on reh'g). In *Gaffney*, after the trial court had overruled the defendant's motion to exclude evidence of the prior convictions, Gaffney elected to bring out the matter of his prior convictions by his own testimony during his direct examination. We explained that since the State did not introduce the evidence or bring it out on cross-examination, and Gaffney had elected instead to do so on his direct examination, he had waived any complaint regarding the admissibility of the prior convictions. *Id.*

3

Subsequent to our decision in *Gaffney*, the United States Supreme Court addressed the same issue and concluded that "a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error." *Ohler v. United States*, 529 U.S. 753, 760 (2000). The Supreme Court explained that once the trial court makes its ruling, both the defendant and the State have choices to make, and those choices have consequences. *See id.* at 757–60. The defendant may choose to introduce the prior conviction on direct examination in hopes of removing its sting, or he may take his chances with the State's introduction of the conviction on cross-examination. *Id.* at 758. If the defendant does not introduce the prior conviction, the State must decide whether to impeach the defendant with the conviction and risk that its use would be reversible error on appeal. *Id.* By introducing the evidence on direct examination, the defendant denies the State this right to decide. *Id.* However, the consequence of introducing the evidence on direct examination is that the defendant waives any appellate complaint regarding the admission of the evidence. *Id.* at 760.

Relying on *Ohler*, several of our sister courts of appeals have held that a defendant waives the right to complain about a trial court's ruling on the admissibility of prior convictions when he preemptively introduces them on direct examination. *See Bryant v. State*, 534 S.W.3d 471, 473 (Tex. App.—Corpus Christi 2017, pet. ref'd); *Roderick v. State*, 494 S.W.3d 868, 881 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Sargent v. State*, No. 10-13-00158-CR, 2014 WL 505350, at *2 (Tex. App.—Waco Feb. 6, 2014, pet. ref'd) (mem. op., not designated for

publication).[2] Since Williamson introduced the prior convictions on direct examination, he waived his complaint regarding their admissibility. We overrule his first issue.

## II. Sufficient Evidence Supported the Jury's Rejection of Self-Defense

Williamson also challenges the sufficiency of the evidence supporting the jury's rejection of his self-defense claim. Williamson contends that no reasonable jury could have rejected his claim of self-defense under the evidence produced in this case.

### A. The Law of Self-Defense

The use of deadly force is a defense to prosecution for aggravated assault if the use of deadly force is justified. *See* TEX. PENAL CODE ANN. §§ 9.02, 9.31–.32. "[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a). However, "[t]he use of force . . . is not justified . . . in response to verbal provocation alone," or "if the actor provoked the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(b). Further, a person's use of deadly force against another is justified if use of force would be justified under Section 9.31, and "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force."[3] TEX. PENAL CODE

---

[2]"Although unpublished opinions have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

[3]A person may also use deadly force "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to prevent the other's imminent commission of" certain enumerated offenses, including robbery or aggravated robbery. TEX. PENAL CODE ANN. § 9.32(a)(2)(B). However, the jury was not instructed regarding this aspect of self-defense.

5

ANN. § 9.32(a)(2)(A). "Reasonable belief" is defined as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE ANN. § 1.07(a)(42).

Under certain circumstances, the actor's belief that deadly force was immediately necessary is presumed to be reasonable. One of these circumstances is when (1) the actor "knew or had reason to believe that the person against whom the deadly force was used" was committing or attempting to commit certain enumerated offenses, (2) the actor did not provoke the other person, and (3) the actor was not engaged in criminal activity, other than a Class C misdemeanor or a traffic violation. TEX. PENAL CODE ANN. § 9.32(b).

In addition, an actor is not required to retreat before using deadly force if "[he] has a right to be present at the location where the deadly force is used, [he] has not provoked the person against whom deadly force is used, and [he] is not engaged in criminal activity at the time deadly force is used." TEX. PENAL CODE ANN. § 9.32(c).

**B.      Standard of Review**

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to

6

draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In drawing reasonable inferences, the jury "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). The jury is also the sole judge of the credibility of the witnesses and the weight to be given their testimony and may "believe all of [the] witnesses' testimony, portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We give "almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). Further, "we must consider all of the evidence admitted at trial, even if that evidence was

7

improperly admitted." *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018) (citing *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

In evaluating a claim of insufficient evidence in the context of a self-defense issue, we apply the general sufficiency review principles set forth above, in conjunction with sufficiency review principles specific to self-defense. *See Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018). When there is a claim of self-defense or defense of a third person to justify use of force or deadly force against another, "the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues." *Id*. at 608 (citing *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991)). The defendant is required to produce "some evidence that would support a rational finding in his favor on the defensive issue." *Id*. (citing *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013)). The State is not required to produce evidence; rather, its burden of persuasion only requires "that the State prove its case

8

beyond a reasonable doubt." *Id.* (quoting *Zuliani*, 97 S.W.3d at 594) (citing *Saxton*, 804 S.W.2d at 913)). Therefore,

> [i]n resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.[4]

*Id.* at 609 (quoting *Saxton*, 804 S.W.2d at 914). Further, as with the general sufficiency principles, the trier of fact is the sole judge of the credibility of defensive evidence, and it is free to accept it or reject it. *Id.* (citing *Saxton*, 804 S.W.2d at 914). Consequently, "[d]efensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the State's evidence insufficient." *Id.* (citing *Saxton*, 804 S.W.2d at 914). Self-defense is a fact issue that is determined by the jury, and "[a] jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory." *Id.* (quoting *Saxton*, 804 S.W.2d at 914).

## C.    Analysis

The evidence at trial showed that on the afternoon of the incident, Ramirez and Brandon Sparks directed comments toward Williamson's girlfriend, Amanda Moore, regarding people on that street always being on dope. They also derisively commented that she should go home and get something to eat. At the time, Moore was walking down the middle of Walnut Street, in front of Ramirez' house, talking to herself and making odd movements with her hands and arms.[5]

---

[4]Williamson does not challenge the sufficiency of the evidence supporting the finding that he committed aggravated assault with a deadly weapon.

[5]According to Williamson, Moore had been diagnosed with certain psychological disorders.

9

Later that evening, Ramirez, Sparks, their wives, and Sparks' children were in their living room preparing to watch a football game. About that time, they heard a knock on the front screen door, and Ramirez and Sparks got up to see who was there. At that point, Ramirez' and Sparks' accounts of the ensuing altercation diverge from that of Williamson.

According to Ramirez and Sparks, Williamson (whom they did not know) was a little bit enraged when they answered the door, so they went outside on the porch to talk with him. Williamson told them that someone had said or done something to his wife, or had disrespected her, and they thought that he had the wrong house. Then Williamson said that he was the one who got the washer and dryer from the side of their house. Although Sparks did not know what he was talking about, Ramirez realized that he was referring to the non-working washer and dryer that had gone missing from his house. Ramirez and Sparks then told him that he needed to go, and Williamson stepped off of the porch, became more irate, and raised his voice. Ramirez also got angry and told Williamson to get off of his property. At that point, Sparks' dog got out of the house, and Sparks went to retrieve the dog and put it back in the house. After Sparks corralled his dog, he found Williamson and Ramirez fighting in some bushes at the side of the house.

Ramirez hit Williamson twice in the face with his fists. The first blow appeared to daze Williamson, and the second blow resulted in Williamson going down on one knee. Ramirez did not hit, kick, or threaten Williamson when he was down on his knee. Ramirez testified that although he was standing in front of Williamson, he was not standing over him. Ramirez then turned his head toward the house. The next thing Ramirez knew, Williamson came up and cut his face. Ramirez was not looking at Williamson when this happened and did not know he had gotten

10

cut until he tried to talk and blood gushed out of his face.[6]  About that time, Sparks saw Ramirez pop up with his hand to his face and heard Ramirez cry out, "He got me, Fam."

Williamson gave a somewhat different account of this encounter.  According to Williamson, he went to Ramirez' house to talk with Sparks and Ramirez about Amanda so they would get a better understanding of her.  After Ramirez and Sparks came to the door, they both came out on the porch.  At that point, Williamson decided it was probably a bad idea to be there and began backing up.  Even though he had a bad knee,[7] as the conversation got louder, he decided that it was time to go because one of them was squeezing closer to him.  He then backed off the porch while keeping his eye on Ramirez and Sparks.  Both Ramirez and Sparks also came off of the porch.  Ramirez kept walking toward him, so he kept backing up.  When they got to the bushes on the property line, Ramirez hit Williamson in the jaw and dazed him.  Ramirez then hit him on the top of the head, and Williamson went down on one knee.  Williamson testified that he was afraid that Ramirez was going to repeatedly hit him in the head and that he was fearful for his life.  So, he pushed himself up, opened the box-cutting knife that had been clipped to his pants, and took a swipe at Ramirez.  Ramirez backed up when he was cut, and Williamson turned and left.  On cross-examination, Williamson admitted that Ramirez did not hit him when he was on one knee, when he pushed himself off the ground, or when he was opening the knife.

---

[6]The evidence showed that Ramirez suffered a ten-inch gash on the left side of his face, extending from about one-half inch left of his left eye to below the left side of his mouth.  The cut sliced through the cheek and nicked an artery, which required surgical intervention.

[7]Williamson testified that he had injured his knee about three months earlier.

Later that evening, Detective Russell Stillwagoner followed tracker dogs[8] to a house on Speedway Street in Greenville, where Williamson and Moore rented an upstairs room from Williamson's nephew. After being directed to the room, Stillwagoner knocked on the door and Williamson opened the door holding an open box-cutting knife, which he immediately threw on the bed. The knife matched the description of the knife used to cut Ramirez. Stillwagoner testified that he did not see any swelling, bruises, or cuts on Williamson's face, neck, head, or upper torso, and that Williamson did not have any obvious signs of being in a recent fight. Officer Jamaine Hamilton took Williamson downstairs and outside while Stillwagoner spoke with Moore and gathered evidence from the room. Hamilton testified that while taking Williamson downstairs and standing with him on the porch, he did not see any knots, bruises, or swelling on his face, or any indication that Williamson had been in a fight. He also testified that Williamson did not limp or favor either leg and that he did not complain about pains in his upper body.

Stillwagoner also talked to Williamson that night. A recording of that conversation was played for the jury. On the recording, Williamson initially denied having an altercation or even being on Walnut Street that day. Later, he said that he had been on Walnut Street in the mid-afternoon, but continued to deny being there at the time of the altercation. When confronted with the hat found at the scene, he denied that he had worn it and claimed he had traded it. When given the opportunity to claim he acted in self-defense, Williamson again denied any involvement in the incident. He also denied having any scrapes or scratches on him and claimed that he had been at his house since mid-afternoon that day.

---

[8] The hat that Williamson was wearing before the altercation remained at the scene when he left.

12

Stillwagoner opined that the box-cutting knife was capable of causing death and serious bodily injury. He also opined that Williamson did not use the knife in self-defense and that Ramirez' hitting Williamson did not justify the use of deadly force by Williamson.

On this record, Williamson argues that no reasonable jury would have rejected his claim of self-defense. His argument, however, is based largely on the jury accepting Williamson's characterization of the altercation. However, in light of Sparks' and Ramirez' testimony and Williamson's initial denial of any involvement in the incident (even when given the opportunity to claim self-defense), the jury was free to reject all or part of Williamson's testimony. *See Thomas*, 444 S.W.3d at 10. In light of his initial denials of involvement, the jury could also reasonably conclude that Williamson's claim of self-defense was motivated by a desire to avoid responsibility for his actions that arose only after he had been charged with the offense.

Additionally, Ramirez testified that after he hit Williamson the second time, he did not hit or threaten him again. Only when he turned to look back at the house did Williamson slash him with the knife. Williamson admitted that Ramirez did not continue the assault while he was on one knee, when he was getting up, or when he opened the knife. In addition, the investigating officers testified that later that evening, Williamson showed no physical signs of having been in a fight and made no complaints about injuries to his body. Based on this evidence, the jury could have reasonably concluded that the two blows to Williamson did not cause serious bodily injury and that a reasonable person in Williamson's circumstances would not have believed that the use of deadly force was necessary to prevent the use of deadly force against him. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(42), 9.32(a)(2)(A).

13

When viewed in the light most favorable to the jury's verdict, we find that on this record, any rational jury could have found beyond a reasonable doubt that Williamson committed aggravated assault with a deadly weapon and could have found against Williamson on his claim of self-defense beyond a reasonable doubt. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Consequently, we find that legally sufficient evidence supported the jury's rejection of Williamson's claim of self-defense. We overrule Williamson's second issue.

For the reasons stated, we affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:      September 5, 2019
Date Decided:        September 20, 2019

Publish

14